UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 1:16-cr-00078-TLS-SLC |
| | ) | |
| | ) | |
| MARKELL PALMER-TATE | ) | |

## REPORT AND RECOMMENDATION

Before the Court are two handwritten motions filed by Defendant Markell Palmer-Tate *pro se*, seeking to withdraw his Plea Agreement. (DE 160; DE 165). The motions were referred to the undersigned Magistrate Judge by Chief Judge Theresa L. Springmann on February 14, 2018, to conduct any necessary hearings and to issue a report and recommendation that includes proposed findings of fact and recommendations for the disposition of the motions. (DE 172).

After the government filed a response brief to the motions (DE 178), I held a hearing on the motions on March 12, 2018 (DE 181), at which Defendant appeared with counsel. For the following reasons, and as discussed at the hearing, I RECOMMEND that Defendant's motions to withdraw his Plea Agreement (DE 160; DE 165) be DENIED.

### A. Findings of Fact

1. Procedural Background

On November 18, 2016, Defendant was charged in a single-count Superseding Indictment with attempted bank robbery by force or violence involving kidnaping during a bank robbery, and aiding and abetting, in violation of 18 U.S.C. §§ 2113(a), (d), and (e), and 18 U.S.C. § 2. (DE 33). On December 5, 2016, Defendant appeared before me and entered a plea of not guilty to the charge. (DE 54).

On July 21, 2017, the government filed a Plea Agreement ("the Plea Agreement") entered into by Defendant and the government. (DE 91). On July 31, 2017, Defendant appeared with his court-appointed counsel, Thomas O'Malley, before me at a change of plea hearing under Federal Rule of Criminal Procedure 11, and Defendant entered a plea of guilty pursuant to the Plea Agreement. (DE 95). I then entered Findings and Recommendation of the Magistrate Judge Upon a Plea of Guilty after the hearing. (DE 96). On August 18, 2017, after Defendant waived any objection, Chief Judge Springmann entered an Order Accepting Findings and Recommendation, adopting them in their entirety and accepting Defendant's plea of guilty to the offense charged in the single-count Superseding Indictment. (DE 101).

On October 25, 2017, Attorney O'Malley filed a motion to withdraw his representation, stating that Defendant had asked counsel to withdraw and that Defendant believed that the attorney-client relationship had broken down and was irreparable. (DE 121). After a hearing on the motion, I granted the motion to withdraw, and Attorney Patrick Arata was appointed to represent Defendant, filing an appearance on November 2, 2017. (DE 126-DE 132).

On November 13, 2017, the probation officer filed a draft of the pre-sentence investigation report. (DE 135). On December 29, 2017, Defendant filed a "notice of no objection" to the pre-sentence investigation report. (DE 150).

On January 26, 2018, six months after the change of plea hearing, Defendant filed *pro se* his first "Motion to Withdraw Plea Agreement for Ineffective Counsel." (DE 160). Several days later, Defendant filed *pro se* another "Motion to Withdraw[] from Plea Agreement by Ineffective Counsel" (DE 165), together with a letter complaining about his counsel (DE 163) and a "Motion to File Objections [T]owards Pre-Sentence Report" (DE 164). The next day, Attorney

2

Arata filed a motion to withdraw his representation of Defendant. (DE 167). Chief Judge Springmann referred Defendant's two motions to withdraw his Plea Agreement to me on February 14, 2018. (DE 172).

On March 12, 2018, I held a hearing on Defendant's motions to withdraw his Plea Agreement, as well as on Attorney Arata's motion to withdraw representation. (DE 181). The motion to withdraw representation, however, was not taken up until after oral argument on Defendant's motions to withdraw his Plea Agreement were concluded, as Defendant stated that he wanted counsel's assistance during that portion of the hearing. The motion to withdraw representation was granted at the conclusion of the hearing (DE 181), new counsel was appointed for Defendant (DE 182; DE 183), and Attorney Robert Gevers filed an appearance on Defendant's behalf on March 26, 2018 (DE 184).

2. Defendant's Arguments

Attorney Arata met with Defendant twice about Defendant's desire to withdraw his guilty plea. At the first visit, counsel advised Defendant that he could not withdraw his plea, and counsel explained his reasons for advising Defendant so. At the second visit, counsel brought Defendant three recent cases concerning a defendant's inability to withdraw a guilty plea, and counsel explained that he would not file a frivolous motion on Defendant's behalf. Attorney Arata reported that Defendant did not want to listen to his advice and sent him insulting letters.

I then asked Defendant if he wanted to speak to the motions himself. Defendant presented argument but no evidence. Defendant argued that he did not think he had been represented effectively by counsel because his counsel (both Attorney O'Malley and Attorney Arata) would not do what Defendant thought should be done, because Attorney O'Malley

3

purportedly gave him false information under the sentencing guidelines and pushed him to sign the Plea Agreement, and because Defendant felt as if he had no choice but to sign the Plea Agreement. Defendant stated that after he signed the Plea Agreement, he went through his case on his own and found things that he thinks will "help him out" that were not brought to his attention by counsel. Defendant further argued that he had three different plea agreements, that he was under distress, and that he did not understand at the time the sentencing consequences of the Plea Agreement that he signed. Defendant claimed that the offense level and enhancements that he pled to during the plea hearing were "totally different" than what he was told he would be pleading to.

### 3. The Government's Arguments

The government's arguments in opposition to the motions were presented by Assistant United States Attorney ("AUSA") Leslie Miller Lowery.[1] The government argued that the Court routinely inquires in a plea colloquy whether the defendant has reviewed the indictment with his attorney and has had sufficient time to do so, whether the defendant has any questions about the charges pending against him, and whether the defendant is satisfied with his counsel's representation of him. The government asserted that if Defendant had answered that he had not reviewed the indictment or had insufficient time to do so, had questions about the charges, or that he was not satisfied with his counsel's representation, the Court would not have proceeded with the plea colloquy before addressing those issues.

The government emphasized that Defendant's attorney is not here to just be "a

---

[1] The government stated that due to the timing of the hearing it did not have a transcript of the change of plea hearing for review.

mouthpiece" for Defendant. Rather, counsel is appointed to represent Defendant to the best of counsel's ability and to advise Defendant about both the good and the bad implications of the facts and circumstances of his particular case. The government further stated that in the plea colloquy Defendant was advised of the penalties that attached to the count for which he was intending to plead guilty, and that those penalties included the mandatory minimum penalty. The government argued that Defendant in his motions seems to be confusing enhancements with the charges against him, and that Defendant was aware at the time of his guilty plea what the maximum possible penalty was for the offense to which he intended to plead guilty.

The government further argued that there was not ineffective assistance of counsel just because counsel may have miscalculated the sentencing guidelines, and that the Court advised Defendant in the plea colloquy that the Court would not know what Defendant's sentence will be until after probation completes a pre-sentence investigation report. The government also recalled that when Defendant was asked in the plea colloquy whether any promises had been made, Attorney O'Malley conveyed Defendant's hope that the government would give some consideration to his sentence if Defendant cooperated and testified against his co-defendants. Defendant was also asked in the plea colloquy whether he and his counsel had the opportunity to review how the sentencing guidelines might apply to his case, and Defendant indicated that he had. The government argued that the fact that the pre-sentence investigation report came back in a way that Defendant does not like, and that the penalties and enhancements that are factually supported apply and affect his sentence, is not a fair and just reason to withdraw a guilty plea. Finally, the government argued that both Defendant and the government gave a factual basis for Defendant's plea of guilty, and nothing presented in Defendant's motions rises to the level of a

fair and just reason to withdraw a guilty plea.

    4. <u>The Court's Findings</u>

At the change of plea hearing on July 31, 2017 (DE 95), Defendant took an oath to tell the truth. I then asked Defendant if he had a chance to read the Superseding Indictment, and Defendant responded, "Yes." I asked Defendant if he had a chance to discuss with Attorney O'Malley the charge against him and any defenses that he might have against this charge, and Defendant responded, "Yes." I asked Defendant if he was fully satisfied with Attorney O'Malley's representation and the advice that Attorney O'Malley had given to him, and Defendant responded, "Yes."

Further into the colloquy, I asked Defendant if he had an opportunity to read and discuss the Plea Agreement with Attorney O'Malley before signing it, and Defendant responded, "Yes." I asked Defendant whether he understood the terms in the Plea Agreement, and Defendant responded, "Yes." I asked Defendant whether there was anything in the Plea Agreement that he did not understand, and Defendant responded, "No." I asked Defendant whether anyone had made any promise or assurance that is not contained in the Plea Agreement to get him to accept the Plea Agreement, and Defendant responded, "No."

At that point, Attorney O'Malley interjected and indicated that he wanted to place on the record that Defendant gave a proffer on or about January 11, 2017, and that Defendant expects to receive some benefit from that proffer. Attorney O'Malley then stated:

> The government has made no assurance of what the benefit he would receive will be, but he expects to receive some. And it has been my estimate, based upon how I see the guidelines applicable to him, and how I see the mandatory minimum applicable to him[,] that he would be less than 120 months attached to the crime that he has committed.

6

I asked the government whether it was aware of the proffer, and AUSA Miller Lowery responded affirmatively. I asked the government whether there was any formal understanding as to what will happen as a result of that proffer, and AUSA Miller Lowery responded that there was not. I then asked her whether it would be fair to assume that the government will take the proffer into consideration along with all the other sentencing factors in determining what the appropriate sentence will be in this case, and AUSA Miller Lowery responded, "Yes."

I then stated:

> So Mr. Palmer-Tate, just so that you're clear on this, I understand, based on what your lawyer has just said, that at one point in time you did give information to the government, and now there is a hope that you would receive a benefit from that.
>
> Typically, what happens is the Court will review your case based on a number of criteria, including the sentencing factors under 3553(a), and would be made aware of this. The government is aware of it and the government may or may not make a recommendation; they're not bound to do so. And so your lawyer is going to make an argument that it should be considered, and the Court may or may not factor that in in determining the sentence.

I asked Defendant whether he understood where he stood with regard to that proffer, and Defendant responded, "Yes." I also asked Defendant whether there were any other side agreements with the government or any other understandings that he had that were not contained in the Plea Agreement, and Defendant responded, "No."

I then went through Section 8 of the Plea Agreement, paragraph by paragraph, to make sure that Defendant understood each of those paragraphs. At the conclusion of that, I asked Defendant whether anyone had attempted in any way to force him to plead guilty or otherwise threatened him, and Defendant responded, "No." I asked Defendant whether anyone had made

7

any promises or assurances to get him to plead guilty, and Defendant responded, "No." I asked Defendant if he was pleading guilty because it was his free will to do so, and he responded, "Yes."

I then explained the possible penalties that Defendant faced for conviction of the charge in the single-count Superseding Indictment to which he intended to plead guilty. I explained that the maximum possible penalty for Defendant's conviction of the charge was imprisonment of not less than 10 years and not more than life, a fine of not more than $250,000, or both such fine and imprisonment, a term of supervised release of not less than two years but not more than five years, restitution to the victims of the offense, plus a special assessment of $100. I asked Defendant whether he understood the possible consequences of his plea, and Defendant responded, "Yes."

I then went on to explain that the Court will determine Defendant's sentence using a combination of advisory sentencing guidelines, possible authorized variations or variances from those guidelines, as well as other statutory sentencing factors. I asked Defendant whether he and Attorney O'Malley had talked about how these advisory sentencing guidelines might apply in his case, and Defendant responded, "Yes." I asked Defendant if he understood that the Court is not going to be able to determine the advisory guideline sentence for his case until after the pre-sentence investigation report has been completed and he and the government have had an opportunity to challenge the facts that were reported in that pre-sentence investigation report, as well as the application of the guidelines that were recommended by the probation office. Defendant responded, "Yes."

I further asked Defendant if he understood that even after that advisory guideline

sentence has been determined, the Court's examination of other statutory sentencing factors under Title 18, United States Code, Section 3553(a) could result in the imposition of a sentence that is either greater than or lesser than the advisory guideline sentence, but that the Court has no authority to sentence him below a statutory mandatory minimum term of imprisonment, which in this case is 10 years, unless the government should make a motion to reduce his sentence. Defendant responded, "Yes."

    At the conclusion of the plea, I asked Defendant to tell me in his own words what he did in connection with the charge that makes him think that he is guilty of the offense. Defendant then explained his factual basis for the plea of guilty. I asked Defendant several questions about how the individual had gotten into the car, whether voluntarily or by force. Defendant clarified that his two co-defendants forced the individual into the car. I then asked AUSA Miller Lowery what she thought the government's facts of this case would be at trial, and I asked Defendant to listen carefully to those facts, explaining that I was going to ask him if he agreed or disagreed with those facts. AUSA Miller Lowery then gave a detailed explanation of what this case would be like if it went to trial.

    Before I could ask Defendant whether he agreed or disagreed with the government's facts as set out by AUSA Miller Lowery, Attorney O'Malley interjected and culled out some of the things that AUSA Miller Lowery said that Attorney O'Malley felt might expose Defendant to additional issues. After culling out that information, I asked Defendant whether he agreed with what AUSA Miller Lowery had said, and Defendant responded, "Yes." I then asked Defendant how he pleads to the charge in the single-count Superseding Indictment, and Defendant responded, "I'm pleading guilty."

## B. Conclusions of Law

1. <u>Applicable Law</u>

"Once a district court has accepted a defendant's guilty plea, 'the defendant does not have an unlimited right to withdraw' it." *United States v. Rinaldi*, 246 F. Supp. 2d 992, 993-94 (C.D. Ill. 2003) (quoting *United States v. Milquette*, 214 F.3d 859, 861 (7th Cir. 2000)). "In fact, a defendant can only withdraw it if he can 'show a fair and just reason for requesting the withdrawal.'" *Id*. (quoting Fed. R. Crim. P. 11(d)(2)(B)); *see also United States v. Underwood*, 174 F.3d 850, 852 (7th Cir. 1999). "This is a heavy burden and it rests entirely on the defendant." *Rinaldi*, 246 F. Supp. 2d at 993-94 (citing *Underwood*, 174 F.3d at 852; *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987)). "A defendant is not entitled to withdraw his plea merely because he has misapprehended the strength of the government's case or, upon reevaluation of the situation, can conceive of an arguable defense." *Id*. (quoting *United States v. Silva*, 122 F.3d 412, 415 (7th Cir. 1997)). Likewise, "that a defendant underestimated his sentence when entering his plea is not a fair and just reason to permit him to withdraw that guilty plea." *Underwood*, 174 F.3d at 853 (quoting *United States v. Knorr*, 942 F.2d 1217, 1220 (7th Cir. 1991)); *see also United States v. Barnes*, 83 F.3d 934, 938-39 (7th Cir. 1996).

"The whole point of the Rule 11 colloquy is to establish that the plea was knowingly and voluntarily made." *Rinaldi*, 246 F. Supp. 2d at 993-94 (citing *Ellison*, 835 F.2d at 693). "A 'presumption of verity' attaches to statements made by a defendant at a Rule 11 hearing." *Id*. (citing *United States v. Redig*, 27 F.3d 277, 280 (7th Cir. 1994)). "To deter abuses in the withdrawal of guilty pleas . . . and to protect the integrity of the judicial process, [the Seventh Circuit] ha[s] held that rational conduct requires that voluntary responses made by a defendant

under oath [when entering a guilty plea] . . . be binding." *Id.* (first, fourth, and fifth alterations in original) (internal quotation marks omitted) (quoting *United States v. McFarland*, 839 F.2d 1239, 1242 (7th Cir. 1988)). "[W]hen the record indicates that the defendant was aware of the reasons supporting [his] motion to withdraw when [he] entered [his] plea . . . the district court is generally justified in discrediting the proffered reasons for the motion to withdraw and holding the defendant to [his] admissions at the Rule 11 hearing." *Id.* (alterations in original) (quoting *United States v. Groll*, 992 F.2d 755, 758 (7th Cir. 1993)).

    2. The Court's Conclusions

Defendant took an oath to tell the truth at the outset of the change of plea hearing, and there is a presumption of verity to his statements made during the change of plea hearing. *See Redig*, 27 F.3d at 280; *Rinaldi*, 246 F. Supp. 2d at 993-94. As such, Defendant's statements made during the change of plea hearing "are binding." *United States v. Martinez*, 169 F.3d 1049, 1054 (7th Cir. 1999) ("We will not force an attitude of skepticism on [Rule 11 hearings] which would eliminate the presumption of truthfulness expected from responses given under oath." (citation omitted)); *see Mariscal v. United States*, No. 11-CV-148-WDS, No. 07-CR-30182-WDS, 2013 WL 5753835, at *6 (S.D. Ill. Oct. 23, 2013) (collecting cases).

It is clear from my review of the plea colloquy that Defendant was aware that there had been plea negotiations that *might* cause the government to give him certain benefits. Attorney O'Malley made a record to protect Defendant by indicating to the Court, and by receiving the government's confirmation on the record, that Defendant had, in fact, proffered a statement to the government so that he might receive a benefit. However, everyone understood that the proffer was not binding and that there was no actual agreement between the parties.

11

It appeared to me at the change of plea hearing, and it appears to me now, that Defendant was competent to enter a plea at the time the plea was entered into, that the plea was knowingly and voluntarily made, and that Defendant voluntarily waived his rights and pled guilty. Defendant was given an opportunity to object to the factual basis for the plea, and he did not do so. These are all factors to be considered when determining whether Defendant has a "fair and just reason" to withdraw his plea. Fed. R. Crim. P. 11(d)(2)(B); *see United States v. Chavers*, 515 F.3d 722, 726 (7th Cir. 2008) (describing the factors that a court considers when applying the "fair and just reason" standard); *United States v. Lundy,* 484 F.3d 480, 484 (7th Cir. 2007) ("When determining whether a defendant entered a plea involuntarily, courts consider the totality of the circumstances." (citations omitted)); *Underwood*, 174 F.3d at 852.

While a plea agreement can specify a sentence as an essential term of the agreement, *see* Fed. R. Crim. P. 11(c)(1)(C), the Plea Agreement that Defendant entered into was not such a plea agreement, *see* Fed. R. Crim. P. 11(c)(1)(B). As such, "[t]he agreement is complete when the parties agree on the nature and extent of the defendant's culpability. They leave the determination of a sentence to the discretion of the district court, as guided by the sentencing guidelines and by the applicable criminal statutes." *United States v. Barnes*, 83 F.3d 934, 938 (7th Cir. 1996) (citation omitted). "A proper plea colloquy informs the defendant of the contingent nature of the sentence." *Id*. (citation omitted).

As explained to Defendant at the hearing on the motions to withdraw his Plea Agreement, a plea agreement is a gamble. A defendant agrees to plead guilty with the hope of reducing his risk, while the government gives up its right to take the case to trial where it perhaps could obtain a bigger sentence. At the end of the day, a defendant can perhaps predict what the

probation department is going to do, and a defendant can object to what the probation department actually does, but the Court is ultimately going to decide the defendant's sentence. *See Martinez*, 169 F.3d at 1053 ("A defense attorney cannot promise his client a particular sentence; all he can do is make a prediction[,]" and "an attorney's mere inaccurate prediction of a sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim" (citations and internal quotation marks omitted)).

"Plea agreements essentially are contracts between the government and defendant, and their utility to either party depends upon the assurance of enforcement." *Underwood*, 174 F.3d at 854 (citations omitted). Here, there was no agreement between Defendant and the government in the Plea Agreement as to what Defendant's sentence would be. Defendant acknowledged at the change of plea hearing that no one had made him any promises other than those contained in the Plea Agreement, and Defendant did not testify at the hearing. *See United States v. Lundry*, 484 F.3d 480, 485 (7th Cir. 2007) ("Lundy acknowledged at his change of plea hearing that no one had made him any promises other than those contained in the agreement. Ultimately, Lundy's failure to testify doomed his claim [of ineffective assistance of counsel], because the burden of justifying relief was his at all times.").

In sum, "[a] guilty plea . . . is not a road-show tryout, and we will not degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess." *Underwood*, 174 F.3d at 854 (citations and internal quotation marks omitted). Accordingly, I CONCLUDE that Defendant's plea was knowingly and voluntarily made, and I see no reason why the plea should be withdrawn. *See id*. at 852 ("[T]he burden of justifying relief rests with the defendant[.]" (citation omitted)). That Defendant underestimated his sentence when entering

13

his guilty plea is not a "fair and just reason" to permit him to withdraw that plea. *See id.* at 853 (citation omitted). Therefore, I recommend that Defendant's motions to withdraw his Plea Agreement be DENIED.

### C. Conclusion

For the foregoing reasons, I RECOMMEND that Defendant's motions to withdraw his Plea Agreement (DE 160; DE 165) be DENIED. The Clerk is directed to send a copy of this Report and Recommendation to Defendant and to counsel for the parties. NOTICE IS HEREBY GIVEN that within 14 days after being served with a copy of this recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations. Fed. R. Crim. P. 59(b)(2). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.

Entered this 9th day of April 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge